UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:20-CR-179-SDJ |
| | § | |
| YVETTE TOMASITA MONTEMAYOR | § | |
| (2) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Yvette Tomasita Montemayor's Motion to Reconsider Bond Determination/Appeal of Detention Order, (Dkt. #181), in which Montemayor seeks revocation of the magistrate judge's pretrial detention order.[1] The Government filed a response. (Dkt. #187). The Court, having considered the motion, the Government's response, the record, and the applicable law, **DENIES** the motion and the relief requested.

### I. BACKGROUND

Montemayor, along with twenty other codefendants, was indicted by a grand jury on August 12, 2020, on one count of conspiracy to possess with the intent to distribute and distribution of methamphetamine, cocaine, heroin, and marijuana in violation of 21 U.S.C. §§ 841 and 846. These charges stem from Montemayor's alleged role in an international drug-distribution network.

Following her arrest in the Southern District of Texas, Montemayor appeared before a magistrate judge for a pretrial detention hearing. At the hearing, the

---

[1] Though Montemayor styles this as a motion to reconsider and cites 18 U.S.C. § 3142(f), the Court concludes that it is more appropriately construed as a motion for revocation of a detention order pursuant to 18 U.S.C. § 3145(b).

1

Government presented the testimony of Drug Enforcement Administration ("DEA") Special Agent Samuel Wasmund on matters involving the charge against Montemayor, her potential flight risk, and her potential danger to the community if released. Montemayor did not call any witnesses, but her attorney cross-examined Agent Wasmund. The next day, the magistrate judge ordered Montemayor detained pending trial, prompting Montemayor's current revocation motion.

## II. LEGAL STANDARD

Under 18 U.S.C. § 3145(b), a person ordered detained by a magistrate judge may seek review of the detention order in district court. The district court reviews a motion to revoke a detention order de novo and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992). Accordingly, the Court has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. A judicial officer may order a defendant detained pending trial upon a finding that the Government has shown by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person

and the community." 18 U.S.C. § 3142(e)(1); *see also Rueben*, 974 F.2d at 586 ("For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required.").

Section 3142(g) provides that a court shall consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *see also United States v. Acosta-Leyva*, 751 F.App'x 594, 595 (5th Cir. 2019) (per curiam).

In some cases, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). The rebuttable presumption arises upon a finding of probable cause to believe that the defendant committed an offense subject to a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* 18 U.S.C. § 3142(e)(3)(A); *see also Rueben*, 974 F.2d at 586. Probable cause exists when offenses

under the Controlled Substances Act are charged in an indictment. *United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987).

Section 3142(e)'s rebuttable presumption "shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion," which remains with the Government. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). If the defendant presents "evidence tending to rebut the presumption," the presumption "nevertheless remains in the case and is a factor to be considered." *Fortna*, 769 F.2d at 251; *see also Hare*, 873 F.2d at 798–99 ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society."). If the defendant does not present evidence sufficient to rebut the presumption, the Court must still review the Section 3142(g) factors. *See United States v. Jackson*, 845 F.2d 1262, 1265 (5th Cir. 1988) (noting that the language of Section 3142(g) "*mandates* district court review of certain factors" (emphasis added)). As the Fifth Circuit has explained, the statute thus creates "an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." *Hare*, 873 F.2d at 799.

### III. DISCUSSION

The Government contends that Montemayor has not rebutted the presumption that she is a flight risk and a danger to the community and that, even if she did rebut the presumption, the Section 3142(g) factors still weigh in favor of detention. To decide the motion, the Court must first determine whether Montemayor is presumed

to be a flight risk and a danger to the public and, if so, whether she has presented evidence sufficient to rebut those presumptions.

## A. Section 3142(e)'s rebuttable presumption applies and has not been rebutted.

The rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community applies in this case. Montemayor has been indicted for alleged violations of 21 U.S.C. §§ 846 and 841(a)(1). Under the Controlled Substances Act, Montemayor faces imprisonment of not less than ten years and not more than life imprisonment and a mandatory minimum of five years of supervised release. *See* 21 U.S.C. §§ 841(b)(1)(A), 846.

The indictment provides probable cause to believe that Montemayor committed the charged offense. *See Trosper*, 809 F.2d at 1110 ("[T]he presumption against pretrial release arises when drug crimes [under the Controlled Substances Act] are charged in the indictment."). Further, the testimony of Agent Wasmund supports the finding of probable cause. *See Fortna*, 769 F.2d at 252 (finding probable cause while relying in part on the affidavit of an investigating agent). Therefore, under 18 U.S.C. § 3142(e)(3)(A), the presumption applies, and Montemayor was required to produce rebutting evidence.

To rebut the presumption, Montemayor bears "only the burden of producing rebutting evidence, not the burden of persuasion." *Hare*, 873 F.2d at 798. However, Montemayor has not produced evidence sufficient to rebut either the presumption that no combination of conditions will reasonably ensure her appearance or the

5

presumption that no combination of conditions will reasonably ensure the public safety.

### 1. Appearance at trial and risk of flight

Montemayor has not presented evidence tending to rebut the presumption that she is a flight risk based on the offense charged. The only purported evidence of ties to the community offered by Montemayor is that she moved from Mexico to Laredo, Texas, a few months prior to her arrest, that she has children living in Texas, and that her maternal aunt has agreed to let Montemayor reside at her residence pending the resolution of Montemayor's charges. (Dkt. #181 at 17–18).

This evidence is insufficient to rebut the presumption that no combination of conditions will reasonably assure Montemayor's appearance at trial. That Montemayor moved from Mexico as recently as two months prior to her arrest supports rather than rebuts the presumption. Montemayor does not dispute that she has lived in Mexico since 2017 and maintains that she only moved to the United States to obtain medical care related to her pregnancy. That Montemayor was a resident of Mexico and only recently came to the United States for the limited purpose of obtaining medical care hardly constitutes a significant tie to the community.

The presumption is also not rebutted by the fact that Montemayor has older children living in Texas with whom she has not lived for over three years. Montemayor has not produced any evidence—nor does she claim—that she is the primary caretaker for any children residing in Texas. The presence of her older children in Texas has not previously prevented Montemayor from residing in Mexico,

so their presence here does not constitute evidence that she would now remain in Texas. Accordingly, Montemayor's evidence that some of her older children reside in Texas fails to rebut the presumption.

Finally, that Montemayor has an aunt who resides within 120 miles of Sherman, Texas, and who would allow Montemayor to reside with her, does not rebut the presumption. Montemayor does not suggest that she has been living with this aunt or that she has ever lived with her. That Montemayor promises to reside with her aunt if she is released does not constitute a sufficient tie to the community to rebut the presumption that no combination of conditions will reasonably assure Montemayor's appearance at trial.

Montemayor has also failed to produce any evidence of employment that would tie her to the community. In short, Montemayor failed to produce any evidence that suggests that she would not return to Mexico if released and therefore has failed to rebut the presumption that no combination of conditions will reasonably assure her appearance at trial.

### 2. Danger to the public

Montemayor has similarly failed to rebut the presumption that she would be a danger to the community if released. Montemayor has not produced any evidence indicating that she would refrain from involvement in drug trafficking were she to be released. *See Rueben*, 974 F.2d at 587 (determining that defendants failed to rebut the presumption when they presented "absolutely no evidence whatsoever" that they would refrain from continuing to traffic drugs). Montemayor informed pretrial

services that she has been unemployed for over five years and that she supports herself with money that is provided to her by Ismael Fernandez, Montemayor's alleged coconspirator. Montemayor's concession that she supports herself financially with money provided to her by an alleged coconspirator only reinforces, rather than rebuts, the presumption that she will engage in drug trafficking if released. Without any evidence that Montemayor would refrain from her involvement in drug trafficking, the presumption that she would present a danger to the community if released has not been rebutted.

### B. Application of the Section 3142(g) factors confirms that Montemayor must be detained pending trial.

Having determined that the presumption applies and that Montemayor has failed to produce sufficient evidence to rebut the presumption, the Court must now consider the Section 3142(g) factors, in light of the presumption, to answer the ultimate question of whether the Government met its burden of proof. *See Jackson*, 845 F.2d at 1265. The Court finds that, having reviewed the Section 3142(g) factors in light of the presumption, the Government proved by a preponderance of the evidence that no combination of release conditions could reasonably assure Montemayor's appearance at trial and further proved by clear and convincing evidence that no such conditions could reasonably assure the safety of the public pending trial. For these reasons, Montemayor must remain detained pending trial.

#### 1. Nature and circumstances of the charged offense

Montemayor is charged with a serious offense—conspiracy to possess with the intent to distribute and distribution of methamphetamine, cocaine, heroin, and

marijuana. Each of these drugs is classified as either schedule I or schedule II—drugs the DEA has determined have a high potential for abuse. *See* 21 U.S.C. § 812(b). If convicted, Montemayor faces a minimum of ten years and a maximum of life in prison. *See* 21 U.S.C. §§ 841(b)(1)(A), 846. The severity of Montemayor's potential sentence weighs in favor of detention. *See United States v. Almasri*, No. H-07-155, 2007 WL 2964780, at *1 (S.D. Tex. Oct. 10, 2007) (concluding that a defendant's potential sentence weighed in favor of detention when the defendant faced a *maximum* sentence of ten years).

The Government also presented evidence that Montemayor has perpetrated violence in furtherance of the drug-trafficking conspiracy that she is allegedly involved in. Agent Wasmund, who has been investigating Montemayor and her codefendants for over four years, *see* (Dkt. #228 at 16:19–20), testified in detail regarding an event where Montemayor aided in the kidnapping and assault of two individuals thought to have stolen drugs from the criminal organization. (Dkt. #228 at 13:2–14:6). Montemayor entered the United States from Mexico and, together with members of the Mexican Mafia, held two individuals at gunpoint and demanded that they return the drugs. (Dkt. #228 at 13:5–9). Montemayor also spoke on the phone with her boyfriend and alleged coconspirator, Ismael Fernandez, and obtained direction on how to threaten the kidnapped individuals. (Dkt. #228 at 13:19–22). Montemayor then threatened to murder the individuals' entire families if the individuals cooperated with law enforcement. (Dkt. #228 at 13:12–16). Following this incident, one of the kidnapped individuals was transported to the emergency room in

critical condition after being repeatedly beaten in the head and receiving multiple lacerations to his face, head, and hands. (Dkt. #228 at 14:1–5). Montemayor's brutally violent tactics were evidently successful as she ultimately recovered five kilograms of cocaine. (Dkt. #228 at 13:7–9).

Montemayor's alleged role in the drug organization also weighs in favor of detention. That Montemayor would be responsible for recovering such a large quantity of cocaine suggests that she maintains an important and trusted role within the organization. Agent Wasmund also testified that Montemayor has acted in a supervisory role, directing and ordering the drug-trafficking activities of her daughter and alleged coconspirator, Yanira Gonzalez. (Dkt. #228 at 14:21–24, 15:10–14).

### 2. Weight of the evidence

The Court must also consider the weight of the evidence against Montemayor, although this factor is considered "to be of least importance in the detention determination." *United States v. Stanford*, 630 F.Supp.2d 751, 755 (S.D. Tex. 2009) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Barnett*, 986 F.Supp. 385, 393 (W.D. La. 1997)).

Montemayor correctly points out that, in the detention hearing before the magistrate judge, the Government hardly addressed the weight of the evidence it has against her. While Agent Wasmund provided general details about his investigation, such as that it involved electronic surveillance, geolocation data, border-crossing history, and cooperating defendants, he did not provide more detail regarding the

specific evidence against Montemayor that he obtained through these sources. (Dkt. #228 at 17:22–24).

Although the Government failed to establish that the weight of its evidence weighs in favor of detention, as noted above, this factor is the least important in the analysis. Accordingly, in light of the unrebutted presumption and the weight of the other factors, the Court nevertheless concludes that the Government has met its burden to show that no combination of conditions would reasonably assure both the safety of the public and Montemayor's appearance at trial.

### 3. History and characteristics of the defendant

Montemayor's history and characteristics weigh in favor of detention. Montemayor has a prior conviction on a similar offense—conspiracy to possess with intent to distribute a quantity in excess of 100 kilograms of marijuana. (Dkt. #237 at 3). Following her conviction, Montemayor failed to appear for her sentencing. (Dkt. #237 at 3). Then, while on supervised release, Montemayor had her conditions modified for noncompliance and then ultimately had her supervised release revoked. (Dkt. #237 at 4). This history serves as strong evidence that no combination of conditions would reasonably assure the safety of the public and Montemayor's appearance at trial.

That Montemayor already has one conviction for the very act she stands charged with today—participating in the trafficking of drugs—suggests that she is unlikely to stop if released. *See Rueben*, 974 F.2d at 586 ("[T]he risk of continued narcotics trafficking on bail does constitute a risk to the community . . . .").

11

Montemayor's failure to appear for her sentencing on that conviction heightens the risk that she will fail to appear for her proceedings in this case. And that Montemayor twice violated the terms of her supervised release, leading to the revocation of her supervised release, strongly suggests that Montemayor would be unlikely to abide by her conditions were this Court to release her pending trial.

Montemayor has also been unemployed for five years. (Dkt. #237 at 2). She maintains that she supports herself with cash given to her by Ismael Fernandez. (Dkt. #237 at 2). Montemayor is accused of working with Fernandez to traffic drugs for profit. Given that Montemayor's only source of income for five years has been an individual Montemayor is alleged to traffic drugs with suggests that Montemayor would likely continue trafficking drugs if released.

Montemayor also has extensive ties to Mexico and was not forthright about those ties when interviewed for her pretrial-services report. Montemayor originally reported that she is a lifetime resident of Laredo, Texas, but now admits that she has lived in Mexico with Ismael Fernandez for the last three years. (Dkt. #237 at 1); (Dkt. #181 at 1–2). Montemayor also first reported that her relationship with Fernandez is only "amicable," though she now acknowledges that she has not only been living with Fernandez in Mexico for years, but "their relationship is strong." (Dkt. #181 at 2). Additionally, Montemayor claims to have moved back to Laredo to live with her daughter Yanira Gonzalez, but the address Montemayor provided for her pretrial services report is not the same address that Gonzalez provided.

(Dkt. #237 at 1). Montemayor's extensive ties to Mexico and her apparent efforts to originally conceal them weigh in favor of detention.

Furthermore, Montemayor purports to have moved back to Texas solely for the purpose of giving birth.[2] (Dkt. #181 at 2). Montemayor's boyfriend and youngest children remain in Mexico. Even if Montemayor did move to Laredo in anticipation of her upcoming labor and delivery, she is likely to return once she has given birth.

The evidence of Montemayor's characteristics and background, combined with the nature and circumstances of Montemayor's current charge, counsel in favor of pretrial detention.

**4. Nature and seriousness of the danger posed by the defendant**

The testimony produced at the sentencing hearing suggests that Montemayor had a significant role in an extensive, international drug organization implicated in the distribution of large quantities of dangerous drugs. In addition to the danger that such extensive drug activity poses by itself, Montemayor has aided in the perpetration of serious violence in furtherance of the organization's objectives. She was involved in the kidnapping and assault of two individuals suspected of stealing the organization's product and threatened to murder the families of any individuals who cooperated with law enforcement. There is no question that these actions have

---

[2] Montemayor also submits the fact that she is in the later stages of a high-risk pregnancy as a reason she should be released. The Court is cognizant of the fact that Montemayor requires adequate medical care for herself and her baby while detained. That said, to determine whether Montemayor should be detained pending trial, the governing law limits the Court's analysis to the risk Montemayor would pose to the public and the risk that she would fail to appear. To the extent that Montemayor argues that her pregnancy renders her less of a danger to the public or less likely to flee, the Court remains unconvinced given the weight of the evidence to the contrary.

presented significant danger to the public, and the Court is convinced that no combination of conditions would prevent Montemayor from continuing in this conspiracy if released.

* * *

In sum, the Court concludes that the Section 3142(g) factors, when considered with the unrebutted statutory presumption that Montemayor is a flight risk and a danger to the public, indicate that there is no combination of release conditions that would reasonably assure the safety of the community and Montemayor's appearance for further proceedings. Montemayor's revocation motion must therefore be DENIED.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant Yvette Tomasita Montemayor's Motion to Reconsider Bond Determination/Appeal of Detention Order, (Dkt. #181), is **DENIED**. Defendant Yvette Tomasita Montemayor shall remain in custody pending trial.

**So ORDERED and SIGNED this 22nd day of December, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE